Good morning, your honors. My name is Tim Ellender. I'm coming from Tervon Parish, and I represent Oracle Oil, L.L.C. This is a solely one-member L.L.C. It's perfected under Title 12 of the Louisiana Revised Statutes. Mr. Brooks, who is the owner of Oracle Oil, L.L.C., owns a number of other legal entities that conduct business at his direction, namely Oracle Gas, Oracle 1031 Exchange, Oracle Delphi or Delphi, rather, and Adore, D-O-E-R-R. Mr. Brooks had Oracle Oil, L.L.C., operate a well in Vermillion Parish. It was a rework of a well. Mr. Brooks designated Oracle Oil as the operator of the well. He also had a number of his other entities at his sole discretion conduct tasks, jobs, ventures, contracts, obligations, all on behalf of Oracle Oil, L.L.C. Throughout the working of this well, he directed these entities to pay some of the expenses on behalf of Oracle Oil, the operator of the well. As it turns out, when we were in court in front of Judge Morgan, a summary judgment was filed seeking to dismiss the claim of Oracle Oil because Oracle Oil did not actually pay the expenses out of their checkbook for these expenses for the reworking of the well. Which is true. Which is true. Absolutely, positively true. That's right. However, these are single-member L.L.C.s under Title XII. The Title XII formulated Louisiana Limited Liability Company for the specific purpose of allowing a single-member L.L.C. to operate business with ease, without the necessity of corporate resolutions, to engage in oral contracts. There's still rules. Yes, there is. There's that possibility, Your Honor. You're absolutely right. But I would suggest to you that that's a question of fact. Mr. Brooks, as the sole member of these L.L.C.s, directed these entities to conduct this business in this fashion, and if the question is whether or not Mr. Brooks is not telling the truth or this is not a believable event, that is a question of fact. What now? Where is the issue of credibility? It's an issue of credibility, Your Honor. That's what I would suggest to you. I mean, it's honest to it, he just says, I have a contract with myself. Well . . . All right, I have an agreement with myself. That's one way of looking at it, Your Honor. These are juridical persons. Well, I mean, that is to say, that ignores the technologies of the law. Well, Your Honor, he operated these businesses . . . Well, what happened in this case? I mean, obviously, I guess, if he had followed, you know, the ordinary legal procedures of documenting these things and having written documents and that sort of thing, he could have done what he claimed to have done, but you can't just, out of the seat of your pants, come in there and make a claim for money if you haven't got a legal claim. You haven't got a legal claim. Where is your legal claim? Well, Your Honor, we believe that Mr. Brooks, through these LLCs, can have a claim for . . . Okay, and what do you base that on? What law do you base that on? Title XII, Your Honor. The ability of Mr. Brooks to operate these legal juridical persons . . . Well, he can do that. I mean, sure he can do that, but he's got to do it within the restraints of other laws. He's got to put it in writing in some instances and so on. I mean, it seems to me . . . I don't see, Your Honor, respectfully, I don't see a writing requirement for business to be conducted between single-member LLCs. I don't see that at all. Well, I mean, I don't know that it . . . I don't see an exception in the law for single-member LLCs. I mean, in Article 856, apparently, it requires a witness or the matter to be in writing or some corroborated evidence for the claim that is being made. And as we read in the briefs, there is zero. Let's take that for a moment, Your Honor. Let's suggest, perhaps, that we have one LLC owned by one person and an LLC owned by another person. Isn't it true that these LLCs owned by different entities can come forward and confess to an agreement that they had reached and that be evidence of the agreement? If that's the case, it matters not that the single-member LLC . . . Have you got a case that says that? No, sir, I don't. I don't think that . . . Well, I mean, you're on a court of law now, so you need cases. Yes, sir, I understand that. But I think that the law in Title XII, which affords LLCs to operate this way and to conduct business in this manner . . . Where's your authority? I think it's Title XII, Your Honor. I think that the law in Title XII . . . What part of Title XII? Read me the words that you're relying on. No, I don't have the words in Title XII that backs that up. What I do know is that all throughout the course of the Louisiana Liability Company, and it's not an old entity. It's not very old. It's 30 years old, I believe, or maybe a little bit longer. But that entity is allowed to do business without writings between themselves. Who says that? They're juridical persons. They're juridical persons under the law, and they are . . . A juridical person can't state the law. They can engage in business together, just like a corporation can engage in business . . . No, I mean, you know, maybe they do business that way. I mean, everybody kind of trusts everybody, and that sort of thing. You don't reduce things to writing because you're relying on people's words. But then when it gets into court, I mean, you're caught with your pants around your ankles. I understand, Your Honor, and I respect your opinion. But my only argument is, if there is an LLC owned by one person and an LLC owned by another person . . . and they come to court and demonstrate that they have an agreement . . . that agreement is going to be the law between the parties. And, if that's the case, it shouldn't matter . . . Until somebody challenges it. That's right, Judge. You're right. That's right. But, if you have two entities that have an agreement . . . It's hard-pressed to find someone that's going to challenge an agreement between these two parties. Hard-pressed, but it was done. I understand, Your Honor. But, my position is, I believe that the law on contracts allows these separately . . . separate entities owned by one person to conduct business . . . Okay, tell me what that law of contract is and read it to me. It's the law of general obligation, Your Honor. The ability of . . . I don't have it right here, Judge. Okay. I don't have the law right here for that. But, I would hope that it would be common legal knowledge . . . that business entities can conduct business between themselves without writings . . . as long as they confess the existence of the agreement. And, that's what Mr. Brooks' affidavit does. But, who confesses what to whom? What are you talking about exactly? Well, Mr. Brooks in his affidavit, dated May 20th, 2009 . . . He confessed to himself? One more time. He confessed to himself? He, in his affidavit, set forth that he had these separate entities . . . and allowed these entities to engage in business buying between themselves through oral contracts. That is a contract with himself. That's a contract between . . . He's allowing himself to do business. That's a contract between two juridical persons. Two separate legal entities that enjoy the benefit of . . . I didn't know that there was any such document. I mean, I didn't . . . I mean, I think that came in after the case was decided, didn't it? There was something . . . I mean, there was some kind of affidavit or statement filed? Yes, Your Honor. The affidavit was signed by Mr. Brooks, who owns all these . . . But, that was signed after the court ruled? No, Your Honor. It was signed on May 20th, 2019 . . . in defense of the motion for summary judgment filed by EPI. And, it said, I, owner of this, confess. And, then . . . Yes, Your Honor. He changes hats and comes and says, I, the owner, confess what I confessed over here. Judge, he specifically states in Number 4 of Exhibit D to the opposition to the motion for summary judgment, under my authority as the sole member and manager of these . . . He acknowledges it was never in writing. Is that correct? One more time. He acknowledges that it was not in writing. Yes, he acknowledges that the agreements between these entities . . . Between himself. He never had an agreement. Between the juridical persons. Through him, as the member, as the acting member manager. Yes, he confessed that he engaged in contracts and bound his companies via oral contracts to perfect leases, pay bills, conduct operations, perform contracting services . . . all for the benefit and in the service of Oracle Oil LLC, your plaintiff in this case. I believe that two juridical persons can conduct business orally. And, I understand that it calls into question Mr. Brooks' veracity about whether or not these two entities actually did that. But, I would suggest to the court that that is a question of credibility of Mr. Brooks. I'm certainly not questioning his credibility. I'm assuring his veracity. Of course, I know he's a very truthful man. And, that's what the court must assume for this de novo review of a motion for summary judgment. And, if you do confess that he is a truthful man for purposes of this hearing, his affidavit is very indicative of the fact that he bound these entities through their operations to conduct business on behalf of Oracle Oil. And, that inures to the benefit of Oracle Oil, in this case, as the plaintiff. I'd like to go ahead and reserve my time for the balance, your Honor. You have the full four minutes. If you want to use it, then you get five additional minutes. Okay. You don't have to use it. It's up to you. Thank you very much, your Honor. Moving to the exclusion in limine of Robert McGowan, the petroleum engineer expert. He's the reservoir expert that Oracle Oil hired. I think that what we're dealing with here is that Oracle Oil lost out on the reserves that they were going to produce in this case. This well was destroyed at the hands of EPI through their negligence. And so, Mr. McGowan came forward and provided scientific analysis as a reservoir expert to suggest that there is this quantifiable reserves in the ground. And, because of what happened, but for EPI's actions, these reserves are lost. I thought in Louisiana, loss of reserves and future revenues are too speculative to be actionable. Your Honor, I read those opinions. I would bring the court to the attention of the mobile case 837 Southern 2nd 11, where not exactly on point, but there was evidence sufficient to support the loss of hydrocarbons underground. So that's 837 Southern 2nd 11. And, your Honor, I would respectfully suggest that there is no other way to compensate Mr. Brooks and Oracle Oil LLC in this matter because the well is ruined and my client, Mr. Brooks, through Oracle Oil LLC, no longer has the leases. He can't go back and rework the well. I'm assuming someone can go back and rework the well. The well was originally run by Stone Energy in 1970. He can't get to the well. He has no right of access to the well. He has no right, your Honor. He has no real right to the property. Who is doing the well? Who is making all the money? No one is making the money, your Honor. I think the wealth, as far as I'm concerned, is stagnant and is not being worked right now. But you're saying that it could be or should be. I think it can be, your Honor. But what I would suggest to you is that my client no longer has the right to. So I think it's a moot point to suggest that my client should go back to the well and secure leases when he can't. I think he's not going to be allowed to secure these leases. He's been denied the right to secure these leases. Thank you very much, Judge. Yes, you've saved your full time for rebuttal. Thank you very much, your Honor. All right, Mr. – is it Remondi? Yes, sir, Remondi. Thank you. All right, Remondi. All right. May it please the Court. Your Honor, I'm Mike Remondi with the Jocelyn Remondi Firm. And I want to thank you for reading the record because obviously the conversation ahead of time you pointed out the issues. Judge Morgan had a number of modified legal reasons to dismiss this case. And she chose the one that's inescapable, and that is that the requirements of Article 1849 were not followed. Having oral contracts in the Wild West, having oral contracts in the Delta years ago may be appropriate. But when you come down to things significantly as incomparable movables, the law requires some type of writing to be exposed. The Court found, and it's in dispute, that there was no writing by any other legal jurisdictional entity to make oral oil pay or reimburse the expenses. As a way of background, this matter was first dismissed on a matter of prescription in the state court. Oracle also sued several other entities for the exact same damage. As you go through Judge Morgan's reason, she determined that this was a matter of contract between the two entities. There was no written contract. Oracle called on the phone, EPI, to do some supervision of the well. So right off the bat, Oracle did not provide any type of scope of work between our two respective companies. While other lawsuits progressed, we filed a summary judgment in the state proceeding claiming the two elements of factual damages or claims made by Oracle were not supported by the evidence. The trial judge dismissed it, and it was later reversed on a court of appeal. Oracle all then filed bankruptcy. We removed this matter to the federal district court in New Orleans. The single jurisdictional entity argument advanced by Oracle has one fatal flaw, and you saw it in the brief. When they filed for bankruptcy, other single-member LLCs wholly owned by Mr. Brooks made claims in the bankruptcy court for damages owed. Can't have it both ways. You can't. The evidence is replete of any cooperating evidence required by the law of Louisiana to support a third-party debt. Oracle was advised to produce it. They could not. Mr. Brooks gave a deposition, and the only evidence he said, which was quoted by Judge Jolly, was, I had an agreement with myself, which is insufficient evidence. That's why Judge Morgan dismissed his case, and we suggest to your honors there's nothing in the record to reverse it. Thank you very much. Thank you, Mr. Remond. Mr. Allender for a vote. Thank you again, Your Honor. The bankruptcy proceeding is of no moment for today's action. These entities— Well, Mr. Remond, he says you can't have it both ways. That is to say these other entities are making claims for the expenses that they paid, and now you seem to be making the claim on behalf of Oracle. Well, Your Honor, the claims against Oracle have not been litigated against the other entities. The truth of the matter is that these different entities that made claims in the bankruptcy proceeding were made by Mr. Brooks. So if the single-member LLC made claims through Mr. Brooks against his single-member LLC, Oracle Oil, it stands to reason that these two businesses can conduct business against each other, can have claims against each other, reimbursements against each other, tasks to perform under contract via oral agreement between these two companies. That's consistent with each other, that Oracle Oil LLC can make claims. These entities can make claims against Oracle. Oracle Oil is here because they have incurred expenses for the reworking of this well and directed its other companies to invest, to perform, and as compensation to place Oracle Oil LLC as the only entity in this matter that can make the claim. That's why we're here, and we believe that these juridical persons can engage in contracts, albeit through a single-member LLC. Thank you for your time. Thank you, Mr. Elder. Yes, the case is under submission.